# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Douglas James Sellner,

                Plaintiff,           **MEMORANDUM OPINION AND ORDER**

vs.                                               Civil No. 13-1289 ADM/LIB

MAT Industries, LLC,

                Defendant.

_____

Stephen W. Cooper, Esq., and Stacey R. Everson, Esq., The Cooper Law Firm Chartered, Minneapolis, MN on behalf of Plaintiff.

Donald M. Lewis, Esq., Jeremy D. Robb, Esq., and John J. Wackman, Esq., Nilan Johnson Lewis PA, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Douglas James Sellner's ("Sellner") Motion for New Trial [Docket No. 515]. Defendant MAT Industries, LLC ("MAT") opposes the Motion. See Def.'s Resp. [Docket No. 520]. For the reasons set forth below, Sellner's Motion is denied.

## II. BACKGROUND

Sellner sued his former employer, MAT, under the Minnesota Whistleblower Act, Minn. Stat. § 181.932 ("MWA"). This Court dismissed the MWA claim on summary judgment and Sellner appealed. The Eighth Circuit reversed and remanded, holding that "[t]he issue is the causal connection between Sellner's protected conduct and his firing," and that the evidence was sufficient to survive summary judgment on this issue. Sellner v. MAT Holdings, Inc., 859 F.3d 610, 614 (8th Cir. 2017).

Sellner's MWA claim at trial was that he was terminated from his employment as a Quality Engineering Technician for refusing to falsify testing data related to air compressors. MAT denies the claim and asserts that Sellner was terminated for "unacceptable conduct," including "inappropriate and offensive statements made to and about his colleagues, an inability to maintain positive and productive relationships with his co-workers, and engaging in conduct that adversely affected the productivity of the workplace." First Ryan Decl. [Docket No. 162] Ex. 30, Interrog. No. 1.

Sellner's whistleblower claim was tried to a jury beginning on May 14, 2018. See Min. Entry [Docket No. 491]. Sellner's counsel had estimated in pretrial filings that the trial would last six days. Statement Case [Docket No. 475] at 4. The trial spanned nine days. The eleven person jury heard testimony from twelve witnesses, and over 100 exhibits were received into evidence. After deliberating for a day and a half, the jury concluded that although Sellner reported a violation of law to MAT or a governmental body, the report was not a motivating factor in MAT's decision to terminate his employment. See Jury Verdict [Docket No. 512].

Seller contends that he is entitled to a new trial. He identifies four errors that occurred during the trial itself. First, Sellner argues that prejudicial and irrelevant evidence was improperly admitted. Second, Sellner argues that the Court refused to admit Plaintiff's Exhibit 179,[1] thereby impairing Sellner's ability to impeach the credibility of Ryan Schwartz ("Schwartz"), a co-worker of Sellner's who testified at trial for the defense. Third, Sellner

---

[1] Sellner's opening brief identified Plaintiff's Exhibit 172 (not 179) as the document that was not admitted. MAT responded by correctly noting that Plaintiff's Exhibit 172 was admitted at trial. Sellner replied that the opening brief misidentified the exhibit at issue, and that Plaintiff's Exhibit 179 is the exhibit that should have been admitted into evidence.

argues that the Court imposed time limitations that impacted Sellner's ability to present his case and to question defense witnesses. Finally, Sellner argues that the Court made comments about the testimony in the presence of the jury that prejudiced Sellner's case.

Sellner also raises two grounds for a new trial that are not directly related to the testimony or evidence. Sellner continues to argue that he should have been permitted to call an expert witness about the defects in the air compressor. Sellner also contends that Jury Instruction 13 was fatally defective.

### III. DISCUSSION

**A. Motion for New Trial Legal Standard**

Federal Rule of Civil Procedure 59(a)(1) provides that the Court "may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ." Fed. R. Civ. P. 59(a)(1). In evaluating a motion for a new trial, the "key question" is whether retrial is needed "to avoid a miscarriage of justice," McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994), either because of legal errors made during the trial or because the verdict is against the weight of the evidence. White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). But in exercising that discretion, "a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." King v. Davis, 980 F.2d 1236, 1237 (8th Cir. 1992) (citing White, 961 F.2d at 780). "Instead, a district

judge must carefully weigh and balance the evidence and articulate reasons supporting the judge's view that a miscarriage of justice has occurred." Id.

**B. Arguments Relating to Events at Trial**

Sellner argues that the Court made improper evidentiary rulings during trial, imposed burdensome time limitations, and made comments from the bench that influenced the jury's verdict.

**1. Prejudicial Testimony**

Sellner argues that prejudicial testimony was improperly admitted at trial. The challenged testimony includes: 1) Sellener's alleged use of listening devices to eavesdrop on neighbors' conversations; 2) Sellner's alleged use of spyware to monitor his neighbors' activities; 3) Sellner's alleged use of sexually suggestive song titles in his Karaoke business; and 4) Sellner's alleged collecting of information about who was having affairs in his neighborhood. Sellner asserts that this testimony was improperly permitted because none of the MAT employees who terminated Sellner's employment claimed to have knowledge about these matters. Without their knowledge, Sellner argues, this testimony was irrelevant to the circumstances surrounding his termination and therefore only served to impinge his character to the jury. Sellner also argues that an anonymous email sent by co-worker Schwartz to MAT's corporate office on April 10, 2012 should not have been received in evidence.

Under Federal Rules of Evidence 403, evidence that is irrelevant or unfairly prejudicial, confusing, or misleading must be excluded. Fed. R. Evid. 401, 403. In assessing evidentiary rules in the context of a Rule 59 motion, "the governing standard is whether the allegedly erroneous evidentiary ruling 'was so prejudicial that a new trial would likely produce a different

4

result.'" Baker v. John Morrell & Co., 249 F. Supp. 3d 1138, 1177 (N.D. Iowa 2003) (quoting Bevan v. Honeywell, Inc., 118 F.3d 603, 612 (8th Cir. 1997)).

The Court's consideration of all of Plaintiff's arguments for a new trial are significantly hindered because no trial transcript has been ordered. But even without the benefit of a transcript to review or document the rulings made at trial, the admissibility of the "other misconduct" by Sellner evidence can be generally addressed. The testimony Sellner challenges was admissible to substantiate the accounts of several witnesses who stated that their work environment was toxic and that the toxicity was, at least partly, caused by Sellner. Although the decisionmakers may not have directly known about specific comments, the decisionmakers were aware that employees had complained about how Sellner was causing tension in the lab. Since workplace dysfunction was a stated reason MAT decided to terminate Sellner's employment, the jury was allowed to consider the evidence.

Additionally, the exclusion of this evidence would not have produced a different verdict. On the Special Verdict Form, the jury determined that Sellner reported a violation of law to MAT or a governmental body, but that the report was not a motivating factor in MAT's decision to terminate his employment.

Sellner next argues an anonymous April 10, 2012 email should not have been admitted into evidence, and that after it was admitted Sellner's counsel was not allowed to adequately question Schwartz about the email. Assuming without deciding the email was improperly received into evidence, its admission does not necessitate a new trial because it did not "affect a substantial right of" Sellner. ACTONet, Ltd. v. Allou Health & Beauty Care, 219 F.3d 836, 848 (8th Cir. 2000) (citation omitted).

Sellner's counsel challenged Schwartz's testimony in extensive cross examination which undermined the supposed corroborative effect of the email. Schwartz admitted that the email was written by him and that his lab colleagues did not sanction or approve of the email. Cross examination showed that the concerns identified in the email were not reflective of the lab generally, but were those of Schwartz specifically. Schwartz testified extensively about his individual issues with Sellner in the lab. The credibility of Schwartz was placed squarely before the jury to decide whatever weight they might think his testimony should deserve.

### 2. Exhibit 179

Sellner argues that the Court erred in refusing to admit Plaintiff's Exhibit 179. Plaintiff's Exhibit 179 purportedly shows that Schwartz modified Test Request 321 ("TR 321") test results. Sellner claims that without this document in evidence, his ability to impeach Schwartz was impaired.

The admission of Plaintiff's Exhibit 179 would not have yielded a different result from the jury. Again, Schwartz was thoroughly cross examined about his role in the lab, and his interactions with Sellner, and the supposed discrepancies between his deposition and trial testimony. Since admission of Plaintiff's Exhibit 179 would not have likely produced a different result, it cannot form the basis for a new trial.

### 3. Trial Court Management and Comments by the Trial Court

A "district court has wide discretion in managing a trial." United States v. Harding, 864 F.3d 961, 966 (8th Cir. 2017). "Trial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." Life Plus Int'l v. Brown, 317 F.3d 799, 807 (8th Cir. 2003). Similarly,

"any comments the judge made during the presentation of evidence generally relate [] to the management of a . . . trial, for which trial judges have broad discretion." Harrington v. State of Iowa, 109 F.3d 1275, 1280–81 (8th Cir. 1997).

Counsel were informed of the trial schedule before opening arguments, and counsel were made aware that the trial needed to be completed by a date certain. The trial schedule included a half-day recess on May 18, 2018 to permit attendance at the investiture of now Circuit Judge David Stras. The other half-day recess, taken on May 22, 2018, was unexpected but necessary to allow attendance at the funeral of Circuit Judge Diana Murphy. Even after subtracting the half-day recesses, the trial on Sellner's single count whistleblower claim consumed eight days, exceeding Sellner's counsel's estimate by two days. The Court recalls no instances of cutting off any testimony as a violation of any alleged time limitations, and no objection was made by counsel to time management by the Court.

As previously mentioned, the absence of a transcript is a very significant impediment to evaluating this Motion. The Court's memory of the context of the trial events and comments made to the jury is very different and in some instances, totally contrary, to the claims made in the Motion for New Trial.[2] Rather than respond point by point to the undocumented claims of judicial misconduct, the Court is confident that the trial transcript will verify that Sellner's counsel was given ample time to try his case and that no comment by the Court deprived Sellner of a fair and just trial by jury.

---

[2] For example, the Court recalls the comment about the marketing of air compressors for holiday gift giving. The comment was intended to express humor at the appropriateness of her receiving an air compressor as a Christmas gift, and in no way was a comment about a particular air compressor or its safety.

7

**C. Arguments Relating to Events Outside the Trial**

    **1. Expert Witness**

Sellner argues that he should have been allowed to present expert testimony relating to the safety of the compressor and pump. Sellner contends that witnesses for the defense opined about the quality and safety of the pump, and his inability to present expert testimony on these issues was extremely prejudicial.

The issue of expert testimony was addressed in a pre-trial motion for summary judgment. On February 8, 2018, the Court held that expert testimony was not needed for the jury to determine whether MAT took an "adverse employment against [Sellner] because []he engaged in statutorily protected conduct, here, making a good faith report of a suspected violation of law." Mem. Op. Order [Docket No. 420] at 26 (quoting <u>Sellner v. MAT Holdings, Inc.</u>, 859 F.3d 610, 614 (8th Cir. 2017)). Nothing that occurred during trial undermines that conclusion.

This was not a products liability case. Rather, this case presented a single count arising under Minnesota's whistleblower statute. Permitting experts to testify about air compressor safety issues was not relevant to whether Sellner's alleged whistleblowing played a part in his employment termination.

    **2. Jury Instructions**

Sellner argues that Jury Instruction 13 was erroneously given. First, Sellner argues that the instruction should have specified which law would have been violated if Sellner was directed by MAT to falsify testing data. In the alternative, Sellner argues that if no specific law was identified, it was proper to instruct the jury that MAT violated the law when it requested Sellner to falsify data. Sellner additionally argues that Jury Instruction 13 erroneously instructed the

jury that for Sellner to prevail on his Whistleblower claim, Sellner's protected conduct must have been "a motivating factor" in MAT's decision to terminate his employment. Sellner argues that "played a part" should have been the language used instead.

Trial courts have broad discretion in formulating jury instructions. B & B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012–13 (8th Cir. 2001). "[J]ury instructions do not need to be technically perfect or even a model of clarity." Id. The question is "whether the instructions, taken as a whole and viewed in the light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury." Id.

Jury Instruction 13 states:

> The Minnesota Whistleblower Act prohibits employers from discharging, disciplining, threatening, or penalizing an employee because the employee, in good faith, reports a violation or suspected violation of any state or federal law or rule or regulation to an employer, governmental body, or law enforcement official.
>
> To prevail on his claim under the Minnesota Whistleblower Act, Plaintiff must prove each of the following elements by the preponderance of the evidence:
>
> 1. Plaintiff in good faith reported an actual or suspected violation of a state law to his employer or a governmental body; **or**
>
> Plaintiff refused Defendant's order that Plaintiff believed, based on objective facts, violated a state or federal law or rule or regulation, and Plaintiff informed Defendant that the order was being refused for that reason; **and**
>
> 2. Plaintiff's report of the violation, or his refusal of the order, was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

Final Jury Instructions [Docket No. 506] at 14 (emphasis in original). Sellner's argument that the jury should have been instructed about a specific law that was alleged to have been violated

9

is rejected. Sellner cites no authority to support his position. The jury instruction is the standard from Minnesota's Model Jury Instructions. See 4 Minnesota Practice, Jury Instruction Guide - Civil 55.65 (6th ed.). For the same reason, Sellner's challenge to the causation language is rejected. The model instructions provide that either "motivating factor" or "played a part" are appropriate. Id. Moreover, in Jury Instruction 15, the Court instructed the jury that Sellner's "alleged good faith report of a suspected violation of law or his alleged refusal to perform an order because he thought it would violate the law was a 'motivating factor' only if [Sellner's] report or refusal played a part in [MAT's] decision to discharge him." Final Jury Instructions at 16 (emphasis added). The jury instructions given fairly and adequately informed the jury about the applicable law. Sellner's arguments to the contrary are rejected.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Douglas James Sellner's Motion for New Trial [Docket No. 515] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 4, 2018.